## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re: AEGIS ASSET TRUST

MANGEMENT, LLC,                                    Case No. 8:19-bk-8036-CPM

     Debtor.

_____

BAY UNITED HOLDINGS, LLC,

     Appellant,

v.                                                 Case No. 8:23-cv-2370-KKM

INXS 7 LLC,

     Appellee.

_____

## <u>ORDER</u>

     Bay United Holdings, LLC, appeals a bankruptcy court's order granting summary judgment disallowing three of its claims. Because Bay United fails to point to any evidence that its predecessor in interest had the right to enforce the notes and mortgages underlying its claims when those claims were filed, the bankruptcy court's order is affirmed.

## I.  BACKGROUND

This appeal arises from the Chapter 7 bankruptcy of Aegis Asset Management, LLC. *See* (Doc. 10-8) at 1–3. The appellee, INXS VII, LLC, purchased sixty-eight properties from the bankruptcy estate free and clear of liens under 11 U.S.C. § 363(f). *See* (Doc. 10-9) ¶¶ 9-10; (Doc. 10-21) ¶ 1; Appellees' Br. (Doc. 25) at 2, 14. Material to this appeal, the estate sold INXS VII properties at: 1901 West Sligh Avenue, Tampa; 6807 East North Bay Street, Tampa; and 1127 Sycamore Street, Lakeland. (Doc. 10-9) at 19–20. The bankruptcy court approved that purchase in an order dated March 29, 2021, which provided that any claims against the proceeds of the sale would be barred after thirty days. (Doc. 10-13) ¶ 24.

On the last day of that period—April 28, 2021—Cloud 9 Properties, LLC, the appellant's predecessor in interest, filed three proofs of claim. *See* (Docs. 10-73, 10-74, & 10-75.) Claim 100 alleged an indebtedness of $90,345.43 secured by a mortgage on the West Sligh Avenue property and included an attached mortgage in favor of Margaret J. Mitchell. (Doc. 10-73) at 2, 5–6. Claim 101 alleged an indebtedness of $16,444.80 secured by a mortgage on the Sycamore Street property and included an attached mortgage in favor of Bob Mitchell Associates, Inc. (Doc. 10-74) at 2, 5–6. And claim 102 alleged an indebtedness of $42,572.26 secured by a mortgage on the East North Bay Avenue property

and included an attached mortgage also in favor of Bob Mitchell Associates, Inc. (Doc. 10-75) at 2, 5–6. None of the three proofs of claim included a writing evidencing a debt.

INXS VII objected to all three proofs of claim. (Docs. 10-21, 10-22, & 10-23.)[1] It contended that each claim was "facially deficient" because it lacked a "promissory note or other evidence of the existence of a debt or other consideration for the mortgage." (Doc. 10-21) ¶ 3; (Doc. 10-22) ¶ 3; (Doc. 10-23) ¶ 3. Cloud 9 responded by filing copies of the three promissory notes that the mortgages secured. (Doc. 10-27) at 15–45. Yet none of the three notes were in favor of Cloud 9. Like the mortgages, the West Sligh Avenue note was in favor of Margaret J. Mitchell, *id.* at 15, while the Sycamore Street and East North Bay Street notes were in favor of Bob Mitchell Associates, Inc., *id.* at 25, 41.

After responding, Cloud 9 assigned its interest in all three claims to appellant Bay United Holdings, LLC. (Docs. 10-39, 10-40, 10-42, 10-43, 10-45, & 10-46.)

INXS VII then moved for summary judgment on its objections because the claims were "unenforceable under applicable non-bankruptcy law" because "there was . . . no evidence that the entity filing the claims had the power or authority to enforce the claims."

---

[1] INXS VII claims standing to object to these claims because after the bankruptcy court approved the settlement of controversies related to the sale of the sixty-eight properties, *see* (Doc. 10-15), "the [Chapter 7] Trustee and the bankruptcy estate have no further obligations relating to any claims filed or asserted against any of the 68 properties," (Doc. 10-21) ¶ 2; (Doc. 10-22) ¶ 2; (Doc. 10-23) ¶ 2; *see also* Appellee's Br. at 18 ("Appellee had standing as a party in interest to object to the claims because it has a financial stake in an order allowing or disallowing the claims because such an order 'diminishes their property, increases their burdens or impairs their rights.' " (quoting *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1335 (11th Cir. 2002))).

(Doc. 10-30) at 1, 7. With its motion, INXS VII submitted evidence of the notes' subsequent transfers. The West Sligh Avenue note and its mortgage passed to Margaret J. Mitchell's estate following her death on March 11, 2022. *See* (Doc. 10-31) at 15–16. Bob Mitchell Associates, Inc., assigned the Sycamore Street note and its mortgage to Joseph Quinn Mitchell on February 27, 2023, who in turn assigned it to himself and Larry Michael Rushing on March 14, 2023. (Doc. 10-32) at 15–18. On that same day, the two men assigned the note to Cloud 9. *Id.* at 19–21. The East North Bay Street note and mortgage followed the same path as the Sycamore Street note, winding up assigned to Cloud 9 on March 14, 2023. (Doc. 10-33) at 11–20. INXS VII argued that because Cloud 9 did not become the holder of the notes and mortgages until almost two years after it filed its proofs of claim, those claims were invalid when they were filed and should be disallowed. (Doc. 10-30) at 8. Bay United responded briefly that the objections should be overruled because no party disputes the validity of the debts or mortgages. (Doc. 10-52) ¶¶ 7–11.

The bankruptcy court held a hearing on the motion on September 1, 2023, at which it gave Bay United an opportunity to present evidence that Cloud 9 acquired the right to enforce the notes and mortgages prior to filing its proofs of claim on April 28, 2021. *See, e.g.,* (Doc. 10-55) at 1, 18. After Bay United failed to do so, it gave Bay United more time to submit evidence that the West Sligh Avenue note—held at one point by Margaret J. Mitchell—had come into Cloud 9's possession prior to Cloud 9 filing its proofs of claim.

4

*Id.* at 28, 30. In response, Bay United filed two affidavits, neither of which establish that Cloud 9 owned any of the notes and mortgages on or before April 28, 2021. *See* (Docs. 10-58, 10-59, & 10-60.)[2] In the absence of any evidence that Cloud 9 owned the notes and mortgages on April 28, 2021, the bankruptcy court granted summary judgment in favor of INXS VII. (Docs. 10-3 & 10-72). Bay United appeals. (Doc. 10-2.)

## II. LEGAL STANDARD

A district court serves in an appellate role when reviewing a bankruptcy court's decisions. *See Williams v. EMC Mortg. Corp.*, 216 F.3d 1295, 1296 (11th Cir. 2000). I "review a bankruptcy court's grant of summary judgment de novo, applying the same legal standard used by the bankruptcy court." *In re Delco Oil, Inc.*, 599 F.3d 1255, 1257 (11th Cir. 2010).

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see* FED. R. BANKR. P. 7056 (incorporating Civil Rule 56). A fact is material if it might affect the

---

[2] Gregory Richard's affidavit does shed some light on the whole transaction. According to Richards, the late Margaret J. Mitchell was the sole owner of both Bob Mitchell Associates, Inc., and Cloud 9, and Mitchell had intended to have the three notes and mortgages in favor of her and Bob Mitchell Associates assigned to Cloud 9, but never did so. (Doc. 10-59) ¶¶ 5, 7. Her son, Joseph Quinn Mitchell, was her attorney-in-fact, was designated to be the personal representative of her estate and was the president of both Cloud 9 and Bob Mitchell Associates. *Id.* ¶¶ 4, 8; *see* (Doc. 10-32) at 16. Joseph Quinn Mitchell believed that Cloud 9 held all three notes and mortgages based on his mother's representations and so filed the proofs of claim in its name. (Doc. 10-59) ¶ 8. Only after his mother's death did he discover that the notes and mortgages were held elsewhere. *Id.* ¶¶ 9–10. The affidavit also explains that the West Sligh Avenue note and mortgage were probated following Mitchell's death, became part of the Mitchell estate, and were later transferred to Cloud 9. *Id.* ¶ 11.

outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of the non-movant.

## III.  ANALYSIS

Because Bay United fails to produce any evidence that its predecessor—Cloud 9— had the right to enforce the obligations central to the three proofs of claim at issue here, the bankruptcy court rightly granted summary judgment in favor of INXS VII.

6

The Bankruptcy Code lays out a multi-step framework for evaluating proofs of claim. 11 U.S.C. § 502; *see In re Eddy*, 572 B.R. 774, 778 (Bankr. M.D. Fla. 2017). A proof of claim is presumptively allowed if filed in compliance with 11 U.S.C. § 501. *See* 11 U.S.C. § 502(a); *see also* FED. R. BANKR. P. 3001(f) ("A proof of claim signed and filed in accordance with these rules is prima facie evidence of the claim's validity and amount."); *In re Baggett Bros. Farm Inc.*, 315 F. App'x 840, 843 (11th Cir. 2009) (per curiam). After a proof of claim has been filed, any party in interest may object. 11 U.S.C. § 502(a). Once a party in interest has objected, the bankruptcy court must determine whether the claim should be allowed. *Id.* § 502(b). The party asserting the claim has the burden of showing that the claim should be allowed. *See Bagget Bros. Farm*, 315 F. App'x at 843.

Cloud 9 did not originally file its three proofs of claim in compliance with the Bankruptcy Code and Rules, so Bay United's claims are not presumptively valid. The Bankruptcy Rules require that, for a claim to be prima facie valid, a claimant whose claim is based on a writing must file a copy of the writing establishing that claimant's right to payment. FED. R. BANKR. P. 3001(c)(1); *see In re Thornburg*, 596 B.R. 766, 769 (Bankr. M.D. Fla. 2018) ("Attaching supporting documentation is a mandatory prerequisite to establishing a claim's prima facie validity."). The three claims lack documentary evidence showing that Cloud 9 had an enforceable claim against the properties, as they lacked both notes in favor of Cloud 9 and either mortgages in favor of Cloud 9 or documents evidencing

the assignment of those mortgages to Cloud 9. *See Forty One Yellow, LLC v. Escalona*, 305 So. 3d 782, 787 (Fla. 2d DCA 2020) ("An assignment of the mortgage without an assignment of the debt creates no right in the assignee." (quoting *Vance v. Fields*, 172 So. 2d 613, 614 (Fla. 1st DCA 1965))). The proofs of claim thus lack prima facie validity and may be "quickly disallowed upon a valid objection, unless the claimant then provides sufficient evidence to establish the validity of the claim by a preponderance of the evidence." *In re Taylor*, 363 B.R. 303, 308 (Bankr. M.D. Fla. 2007).

Bay United has not met its burden here. A bankruptcy court must disallow a claim if the "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). Except to the extent that a claimed right to payment is "contingent or unmatured," *id.*, it "must be enforceable against the debtor under applicable state law when the claim is filed," *In re Food Mgmt. Grp., LLC*, 484 B.R. 574, 589 n.8 (S.D.N.Y. 2012) (quoting *In re J & S Conveyors, Inc.*, 409 B.R. 635, 647 (Bankr. W.D.N.Y. 2009)); *see also* 11 U.S.C. § 101(10)(A) (defining "creditor" as any "entity that *has* a claim against a debtor" (emphasis added)); FED. R. BANK P. 3001(a), (b) (providing that "[a] proof of claim is a written statement of a creditor's claim"). It goes without saying that only an entity with the right to enforce a note and mortgage may lawfully do so. *See Bank of N.Y. Mellon v. Welker*, 194 So. 3d 1078, 1080 (Fla. 2d DCA 2016). And Bay United has

put forward no evidence that its predecessor in interest, Cloud 9, had a right to payment on April 28, 2021.[3] Indeed, the affidavit that Bay United itself filed establishes that Cloud 9 did not come to hold the notes and mortgages until March 14, 2023. *See* (Doc. 10-59) ¶¶ 11–12).[4] Bay United points to no authority that prima facie invalid claims must be allowed if a claimant acquires rights in the instruments that would have supported the claims almost two years after the bar date had passed. In the absence of such authority, the bankruptcy court correctly granted summary judgment.

## IV.    CONCLUSION

Accordingly, the bankruptcy court's order is **AFFIRMED**. The clerk is directed to **ENTER JUDGMENT**, which shall read: "The order of the bankruptcy court is affirmed," **TERMINATE** any pending deadlines, and **CLOSE** this case.

**ORDERED** in Tampa, Florida, on January 6, 2025.

Kathryn Kimball Mizelle
United States District Judge

---

[3] Bay United repeatedly claims that the upshot of INXS VII's argument is the invalidation of the mortgages. *See* Appellant's Br. at 12, 15, 17–19, 21, 23–25, 27–28. Not so. The question is not whether the mortgages (or the notes) were valid but whether Cloud 9 had a right to payment under them. Whether an instrument is valid and enforceable and whether a particular party has the right to sue on an instrument are separate inquiries.

[4] Because the affidavits support affirmance, I need not address INXS VII's argument that they should not be considered at all. *See* Appellee's Br. at 33–36.